**SOUTH PORT MARINE,
LLC, Plaintiff,**

v.

**GULF OIL LIMITED PARTNERSHIP
and Boston Towing & Transportation
Company, L.P., Defendants.**

No. Civ.A. 98–20–P–H.

United States District Court,
D. Maine.

Oct. 14, 1999.

Daniel G. Lilley, Daniel G. Lilley Law Offices, Portland, ME, David J. Perkins, Perkins, Olson & Pratt, Portland, ME, for plaintiff.

William H. Welte, Welte & Welte, P.A., Camden, ME, for defendant Gulf Oil Corp.

Leonard W. Langer, Thompkins, Clough, Hirshon & Langer, Portland, ME, Brian P. Flanagan, Flanagan & Hunter, Boston, MA, for defendant Boston Towing.

## ORDER ON DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW OR FOR NEW TRIAL

HORNBY, Chief Judge.

The issues here are the scope of damages available under the Oil Pollution Act of 1990, 33 U.S.C. § 2702(b), and the sufficiency of the evidence to support a jury verdict awarding damages for lost profits and other economic losses. I conclude that an owner's recovery of economic loss caused by a gasoline spill in navigable waters is not limited to damage to its physical property, but may include goodwill and other intangibles. In this case, however, the evidence does not support the jury's award in those categories and supports only a minor portion of the award in the category of future lost profits.

### FACTUAL BACKGROUND

In the early morning hours of February 5, 1997, the defendants were pumping 93–octane gasoline from Gulf Oil Limited Partnership's onshore facility into Boston Towing & Transportation Company's

barge located in navigable waters. During the transfer, between 20,000 and 30,000 gallons of gasoline spilled overboard from the barge into Portland Harbor. This gasoline drifted into South Port Marine's marina, dissolving some of the styrofoam floats, and causing physical damage to the docks. The jury awarded the following damages under the Oil Pollution Act: $181,964 for property damage; $110,000 for lost profits; and $300,000 for other economic losses, specifically loss of goodwill and/or business stress. The defendants have now moved for judgment as a matter of law or for a new trial on the last two categories of damages.

## DISCUSSION

### Statutory Scope of Damages

The defendants contend that under the Oil Pollution Act, South Port Marine cannot recover for loss of goodwill and/or business stress. The statute allows a party injured by a gasoline spill to recover:

> Damages for injury to, or economic losses resulting from destruction of, real or personal property, which shall be recoverable by a claimant who owns or leases that property.

33 U.S.C. § 2702(b)(2)(B).

South Port Marine owns the property that was damaged by the gasoline spill. The defendants argue that South Port Marine cannot recover for any loss of goodwill and/or business stress under subsection (B), however, because that provision requires outright destruction of all the owner's property as a precondition. Not all of South Port Marine's physical property was destroyed.

■ I reject the defendants' interpretation of subsection (B). The defendants are arguing in effect that economic losses like goodwill can be recovered under subsection (B) only if the assets are completely destroyed, on the premise that the language referring to "economic losses resulting from destruction of real or personal property" is the exclusive basis for recovering economic losses. I see no basis in the statutory language for the defendants' narrow reading. Subsection (B) straightforwardly permits the recovery of "damages for injury to . . . real or personal property." I take those terms to have their ordinary legal meaning, and the term "personal property" ordinarily includes intangible assets. Thus, not only can a corporation like the plaintiff recover for the physical damage to its docks, as the defendants concede, but it can also recover compensation for injury to its intangible assets—personal property—in the marina business. Alternatively, if I were to consider recovery only under the language "economic losses resulting from destruction of . . . personal property," I observe that there is ample evidence that *some* of South Port Marine's property, specifically some of the styrofoam flotation, was destroyed. The jury was entitled to find that the intangible economic losses for which it awarded damages—loss of goodwill and business stress—resulted from that specific property destruction.[1]

## SUFFICIENCY OF THE EVIDENCE

The question remains, however, whether the evidence supports the jury award. The defendants attack the award of lost profits and other economic loss (goodwill and/or business stress).

### A. Lost Profits

The jury awarded South Port Marine $110,000 for lost profits. Under this category, South Port Marine had sought $125,-

---

1. Because of my ruling on subsection (B), I have no reason to address the interpretation of subsection (E), a different category of damages available to owners and nonowners alike. Subsection (E)'s purpose appears to be to displace the *Robins Dry Dock* admiralty rule in Oil Pollution Act cases. *Robins Dry Dock & Repair Co. v. Flint,* 275 U.S. 303, 48 S.Ct. 134, 72 L.Ed. 290 (1927) (physical damage is a precondition to recovery of lost profits or impairment of earning capacity).

000 for future slip revenues allegedly lost because the spill caused a delay of dredging operations for new slips, and $80,000 for business interruption caused by the spill. During the trial, however, South Port Marine's expert accountant reduced the amount of future slip revenues allegedly lost to $105,000, conceding that he had not discounted the damages to present value and that $20,000, therefore, should be subtracted.[2]

■ South Port Marine's accountant provided the testimony for this future income of $105,000. He testified that he did the "number crunching," but that in doing so he relied upon the projections and the business plan prepared by Lloyd Reynolds, Sr., one of South Port Marine's three owners. He also testified that he had never read that business plan nor evaluated it, but had simply accepted Lloyd Reynolds, Sr.'s numbers. Reynolds, Sr. testified that his business plan was the result of three years of study and that it called for an expansion of the marina by 25 slips once dredging was complete. Reynolds, Sr. testified that he believed that South Port Marine could fill these 25 additional slips because the marina had a bad reputation for draft under the previous owners; he believed that adequate dredging would cure this bad reputation.[3] But no evidence was presented at trial to support the conclusion that a market existed for the 25 additional slips. There was testimony from the defendants' economist that after the accident the marina's capacity utilization had improved slightly and that average vessel length had increased. There was no evidence, however, that if the dredging had been completed earlier as planned, there would have been a demand for 25 new slips. In short, the record is simply barren of evidence to support the business plan's assumption that a market existed for 25 additional slips at the time the oil spill occurred. *See International Adhesive Coating Co. v. Bolton Emerson Int'l,* 851 F.2d 540, 546 (1st Cir.1988) ("In order to prevail in this action, [the plaintiff] had to present evidence tending to establish the disputed facts [the accounting expert] assumed."). South Port Marine, therefore, cannot recover the $105,000 of projected future slip revenues.

■ The claimed business interruption damages of $80,000 consisted of two numbers—$65,000 caused by the diversion of South Port Marine's employees to making temporary repairs to South Port Marine's docks and $15,000 attributed to revenues allegedly lost when customers declined to return to the marina after the spill. South Port Marine's accountant relied on management's numbers to determine the number of labor hours used for dock repairs and from those numbers calculated how much revenue was allegedly lost because of business interruption, namely the $65,000. Certainly South Port Marine is entitled to recover for the costs of repairs to the docks and it has recovered this under the property damage element. The amount requested here, however, is for lost income. The record is devoid of any evidence that there were South Port Marine customers ready to use and be billed for the services of these employees who were assigned to making temporary repairs. The fact that South Port Marine employees worked on repairs may be proper to use in calculating the value of the physical injury to the docks and the cost of

---

2. The jury verdict of $110,000 probably reflected the $105,000 of lost future slip revenues together with $5,000 of business interruption. The defendants' expert, disagreeing with South Port Marine's accountant's valuation of business interruption, testified to a business interruption loss of only $5,000. I cannot be certain of the jury's arithmetic, however, and therefore analyze all three damage components.

3. Despite discovery requests, South Port Marine had never turned over this business plan to the defendants because Lloyd Reynolds, Sr. considered it "proprietary." In light of my ruling, I find it unnecessary to evaluate the consequences of this discovery issue.

repairing them, but it is not a component of lost profits unless there is evidence that an income stream was diverted because of the unavailability of these workers. There simply is no evidence that business was turned aside because these workers were occupied with repairs.

■ The $15,000 request for future slip revenues because of the spill's interruption of the business is somewhat different. Even the defendants' expert appeared to concede $5,000 of such loss. South Port Marine's accountant testified that he looked at records of slips that had been rented and then had become vacant at the time of the spill. Although his testimony could have been better developed to provide a foundation for his numbers, I construe it most favorably to the plaintiff and conclude that the $15,000 future slip revenue award should stand.

### B. Other Economic Losses

Under my analysis of the Oil Pollution Act, South Port Marine is entitled to recover any decline in the total fair market value of its assets arising out of the damages to its docks.

■ But the evidence does not support the jury's award for either goodwill or business stress.[4] The testimony about loss of goodwill came from South Port Marine's accountant. He estimated the business's goodwill value at $100,000 (notwithstanding the fact that upon the purchase of the business a few months before the spill, goodwill was set at only $22,500). I will assume that the jury could accept this value (the accountant explained that he simply used 10 percent of the business's overall value, saying that the percentage was based on his experience in valuing small closely-held Maine businesses). But the accountant never gave any basis for concluding that this goodwill had been reduced to zero or to any other number.

■ The $150,000 figure for damages due to business stress, according to the accountant, represented the reduced price that a prospective purchaser would pay for the business given the risk of bankruptcy once the primary lender had placed South Port Marine into workout. He gave no analysis in support of this opinion and pointed to no evidence to support the figure. There is no evidence that he made any investigation of or received any information regarding the market for a business like South Port Marine's. Standing alone, therefore, his opinion was not suffi-

---

4. Because the evidence does not support the jury verdict on these two elements, I need not address the additional complication that South Port Marine could not pursue a theory of damages based upon decline in total fair market value. (It had previously declined to produce information that would have supported it. I ruled at trial that decline in total fair market value was not an available measure of recovery.)

South Port Marine proceeded instead to try to prove and recover specific components of its loss. But the two categories of goodwill and business stress are problematic as matters of separate proof. "Goodwill" is commonly defined as "the excess of cost of an acquired firm or operating unit over the current or fair market value of net assets of the acquired unit." Similarly, "[i]n the purchase of a business, goodwill generally is the difference between the purchase price and the value of the assets acquired." Black's Law Dictionary 694–95 (6th ed.1990); see 1 Financial Accounting Standards Board, Accounting Standards § B50.403 (1994). In other words, goodwill—an intangible—is less a separately valued piece of property than it is a label for the difference between the overall price of a company and the price of its particular assets. Thus, in seeking to recover damages for physical loss plus lost profits plus loss of goodwill, South Port Marine's position that it was not seeking any recovery for total fair market value rings hollow. Similarly, the so-called "business stress" damage that South Port Marine seeks represents the reduced sale value of its assets because of South Port Marine's dire financial circumstances. Because South Port Marine was in trouble on its bank loan, it allegedly faced a distress sale and a reduced value for its physical assets of real and personal property. Thus, business stress also is not a loss separate from the total value of the business. In short, both the goodwill and the business stress numbers presented to the jury were really back door attempts to recover a decline in the total fair market value of the business.

cient to justify submitting this claim for damages due to business stress to the jury.

As a result, the defendants are entitled to judgment as a matter of law on the claims for lost profits in excess of $15,000, for the damages awarded for loss of goodwill, and for business stress.

## MOTION FOR NEW TRIAL

Although I grant judgment as a matter of law in favor of the defendants for all but $15,000 on the second and third categories of damages, I must rule on the motion for a new trial as well, *see* Fed.R.Civ.P. 50(c)(1), in the event that my order granting judgment as a matter of law is vacated. On the third category of damages, the testimony itself would support at most an award of $250,000 (goodwill of $100,000 and business stress of $150,000). During closing argument, moreover, the plaintiff's lawyer requested only $200,000 under this category, thereby waiving recovery of any amount over $200,000. Therefore, I would also grant the motion for a new trial unless the plaintiff agrees to a remittitur in the amount of $100,000.

So ORDERED.